**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | | |
|---|---|---|
| **CYNTHIA KAY WELLS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:14-cv-0654-MC |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CAROLYN W. COLVIN**, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Kathryn Tassinari and Drew Johnson, Drew L. Johnson, P.C., 1700 Valley River Drive, Eugene OR 97401. Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; John C. Lamont, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**McSHANE, District Judge**.

Cynthia Kay Wells ("plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

for Social Security Income ("SSI"). Because the Commissioner's decision is supported by substantial evidence, the decision is AFFIRMED.

## I.    BACKGROUND

### A.    The Application

Born in 1972, plaintiff was 39 years old at the time of the administrative hearing. Tr. 47, 172. She dropped out of school after the ninth grade and earned her GED in 2000. Tr. 52, 241. She completed some college and reported a history of working at several short-term, unskilled jobs. Tr. 71-72, 183. Plaintiff last worked in 2004, at the Courtyard Cafe. Tr. 40. She alleges disability due to personality disorder, panic attacks, stress, fibromyalgia, anemia, and kidney problems. Tr. 176.

Plaintiff filed her application for SSI on December 31, 2009, alleging disability as of January 1, 2002. Tr. 149-154. After the Commissioner denied her application initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 102-04. An administrative hearing was held on August 30, 2012. Tr. 31-84. At the hearing, plaintiff amended her alleged onset date to December 31, 2009. Tr. 36.

On December 21, 2012, ALJ Alan Beall issued a written decision finding plaintiff not to be disabled. Tr. 12-20. The Appeals Council denied plaintiff's subsequent request for review on February 26, 2014, and the ALJ's decision became the final decision of the Commissioner. Tr. 1-4. This appeal followed.

### B.    The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42

U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

      5.       Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 416.920(a)(4)(v); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett,* 180 F.3d at 1099.

## C.    The ALJ's Decision

The ALJ performed the sequential analysis. At step one, he found that plaintiff had not engaged in substantial gainful activity since December 31, 2009, the amended alleged onset date. Tr. 14. At step two, the ALJ concluded that plaintiff had the following severe impairments: posttraumatic stress disorder, dissociative identity disorder, panic attacks with agoraphobia, borderline personality traits, history of polysubstance abuse, and anemia. Tr. 14-15. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 15

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and found that she retains the capacity to perform unskilled work with SVP of 1 or 2, with the following limitations: she can lift and/or carry fifty pounds occasionally and twenty pounds frequently; she can sit for at least six hours during a normal eight-hour workday with normal breaks; she can stand and/or walk for about six hours during a normal eight-hour workday with normal breaks; she can perform push/pull activities without limit except as shown for lift/carry; she can never climb ladders, ropes or scaffolds; she can perform all other postural activities on at least a frequent basis; she should avoid concentrated exposure to workplace hazards such as unprotected heights and unguarded moving machinery; she should not be required to operate any motor vehicle; any job training should be by visual demonstration rather than reading; she can perform simple work-related decision-making in an environment with few workplace changes; and she can tolerate no more than brief, superficial contact with the public and only occasional contact with co-workers and supervisors.  Tr. 16.

At step four, the ALJ found that plaintiff was unable to perform any of her past relevant work.  Tr. 18.  At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff could perform jobs that exist in significant numbers in the national economy, including budder, hand packager, and cleaner.  Tr. 19.  Accordingly, the ALJ found that plaintiff was not disabled.  Tr. 20.

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*,

554 F.3d 1219, 1222 (9th Cir. 2009). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotations omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id*.; *see also Bray*, 554 F.3d at 1226.

## III. DISCUSSION

Plaintiff argues that the Commissioner erred by (1) improperly evaluating the medical evidence, (2) rejecting her subjective symptom testimony; (3) rejecting the lay testimony of her husband; and (4) failing to include all of her limitations in the RFC.

## A.    Medical Evidence

Plaintiff first argues that the ALJ erroneously rejected the opinion of consultative physician Gale Smolen, M.D. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-

treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

Dr. Smolen performed a consultative psychiatric evaluation on February 24, 2010. Tr. 241-45. She concluded that plaintiff would be able to remember and understand instructions with no impairment, and concentrate and attend to tasks with only mild impairment. Tr. 244. Dr. Smolen opined that plaintiff had only mild limitations in concentration and attention but "would have difficulty getting along well with people on a mental basis." Tr. 243-44.

The ALJ accorded some weight to Dr. Smolen's opinion, explaining that "the medical evidence of record establishes that [plaintiff] has less restrictive social limitations" than Dr. Smolen assessed. Tr. 17. The ALJ, however, arguably incorporated all of the limitations articulated in Dr. Smolen's opinion into the RFC. Tr. 16. The ALJ need not provide clear and convincing reasons for rejecting a doctor's opinion if the ALJ did not reject the doctor's conclusions. *Turner v. Comm'r*, 613 F.3d 1217, 1223 (9th Cir. 2010). In this case the RFC includes a limitation that plaintiff have "no more than brief, superficial contact with the public and only occasional contact with co-workers and supervisors." Tr. 16. This limitation accords with Dr. Smolen's opinion that plaintiff would have difficulty getting along with others due to her mental limitations. In formulating plaintiff's RFC, the ALJ also relied upon the opinion of state agency consultant Kordell Kennemer, Ph.D., who based his opinion upon Dr. Smolen's, and concluded that plaintiff can perform simple tasks with limited public contact. Tr. 263, 267. The ALJ also incorporated these limitations into the RFC. Tr. 16.

Because he incorporated Dr. Smolen's opinion into the RFC, the ALJ was not required to provide clear and convincing reasons for rejecting her opinion. *Turner*, 613 F.3d at 1223. Thus,

any error in the ALJ's discussion of Dr. Smolen's opinion was also harmless. *Molina v. Astrue*, 674 F.3d 1104, 1116 (any error is harmless if it is inconsequential to the ultimate nondisability determination).

## B.    Credibility

Plaintiff next argues that the ALJ erred by rejecting her subjective symptom testimony. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (quotation marks and citation omitted). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, 1996 WL 374186 (Jul. 2, 1996).

Further, the Ninth Circuit has said that an ALJ "may consider ... ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, ... other testimony by the claimant that appears less than candid [, and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

At the hearing before the ALJ, plaintiff testified that her social problems were her biggest obstacle to sustaining gainful employment. Tr. 48. She had not had any mental health treatment

since 2004, when she lost her medical insurance. *Id.* Prior to 2004, she was seeing a mental health provider and also utilized an emergency hotline when she had "attacks or fits." *Id.* At the time of the hearing, plaintiff's medications included Citalopram, Trazadone, Buspirone, and Depakote. Tr. 48-49. She testified that her medications control her anxiety and mood. Tr. 49.

Plaintiff has lived in a homeless shelter on and off since 2004. Tr. 52-53. When she leaves the shelter, she stays in a tent by the river. Tr. 53-54. Her anxiety increases the more she is around people; for example, she is "totally overwhelm[ed]" in shopping centers like Safeway or Walmart, but is able to go into smaller stores. Tr. 63-64. Plaintiff used methamphetamine for 18 years and last used methamphetamine four years prior to the hearing, but testified that she has remained clean for the past four years. Tr. 56-57, 62.

The ALJ rejected plaintiff's testimony as to the disabling nature of her limitations. Tr. 17. First, he found that plaintiff's impairments were effectively controlled with treatment. Tr. 18. A claimant's positive response to treatment is a relevant credibility consideration. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication or treatment are not disabling for purposes of determining eligibility for benefits). For example, plaintiff had the most difficulty with functioning while she was using methamphetamines. Tr. 18, 333-36. By contrast, she reported "doing OK" while on medication, stating that her mind slowed down and her mood was good. Tr. 322, 324. The ALJ's discussion of plaintiff's functioning while on medication was a clear and convincing reason to discount her testimony that she was completely disabled. *Warre*, 439 F.3d at 1006. Although plaintiff was unable to continue using medication when she lost her insurance, the overall evidence that treatment was effective in reducing her symptoms was a reasonable basis for the ALJ's credibility determination, because plaintiff had successfully engaged in treatment

during the relevant period.  *See, e.g.,* Tr. 342 (progress notes from nurse practitioner dated May 15, 2012).

Second, the ALJ found that plaintiff's activities were inconsistent with her level of impairment as alleged in her testimony.  Tr. 17.  Evidence of an active lifestyle can undermine a disability claimant's credibility, *Bray*, 554 F.3d at 1226-27, and daily activities that are inconsistent with alleged symptoms are a relevant credibility consideration.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Here, the ALJ noted the plaintiff attended school as a full-time student in 2002, and was told by her therapist in 2004 that she was capable of attending college.  Tr. 17, 321.  Plaintiff's ability to attend college full-time contradicts her testimony regarding the severity of her limitations and thus further undermines her credibility.[1]

Third, the ALJ found that plaintiff made inconsistent statements regarding her methamphetamine use.  The ALJ is entitled to use ordinary techniques of credibility evaluation when assessing a claimant's credibility.  *Smolen*, 80 F.3d at 1284.  Here, he noted that plaintiff told one medical provider that she had not used methamphetamine since 2005, but other records show that plaintiff's methamphetamine use occurred as recently as May, 2006.  Tr. 18. Plaintiff's inconsistent statements regarding her drug use provide an additional clear and convincing reason supporting the ALJ's credibility determination.

Fourth, the ALJ found that the medical evidence contradicts plaintiff's subjective symptom testimony.  While a claimant's testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," *Rollins*, 260 F.3d at 857, conflict with medical evidence is a clear and convincing reason to reject a claimant's testimony.  *Keyser v.*

---

[1] Although plaintiff dropped out of college in 2004, she testified that she did not stop due to her impairments; rather, she stated that she stopped going to school because she was attacked by the person she was dating at the time.  Tr. 60-61.

*Colvin*, 2015 WL 1319503 at *15 (D. Or. March 23, 2015). Here, the ALJ noted that plaintiff had greatly improved by 2011 and was doing well in May of 2012. Tr. 18. Further, no treating or examining physician who contacted plaintiff during the relevant period concluded that plaintiff was disabled by her impairments. Tr. 18. On this record, the ALJ provided sufficient clear and convincing reasons for rejecting plaintiff's credibility. *Keyser*, 2015 WL 1319503 at *15. The ALJ's credibility determination is affirmed.

## C.    Lay Testimony of Michael Wells

Plaintiff next argues that the ALJ erroneously rejected the lay testimony of her husband, Michael Wells. An ALJ must provide "germane reasons" for rejecting lay testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis*, 236 F.3d at 511. It is not reversible error to reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122.

Mr. Wells completed a third party function report on January 29, 2010. Tr. 200-06. He wrote that plaintiff has difficulty going into a business by herself. Tr. 203. Mr. Wells stated that plaintiff does not get along with anyone and is constantly "frustrated and mad." Tr. 204-05. He indicated that plaintiff does not talk very much and often speaks too fast and does not make a lot of sense. Tr. 205. Mr. Wells wrote that plaintiff does not get along well with authority figures, and cannot pay attention to one thing for very long. Tr. 206.

The ALJ summarized Mr. Wells's testimony in his written decision, and gave it only "some" weight because it was not supported by the medical evidence. Tr. 17-18. As discussed above, none of the medical providers who came in contact with plaintiff opined that she was disabled by her impairments, or assessed limitations as severe as those reported in Mr. Wells's function report. Further, Mr. Wells described essentially the same limitations as plaintiff in her own testimony. Therefore, the ALJ's reasons for rejecting plaintiff's testimony "apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122. On this record, the ALJ provided sufficient germane reasons for rejecting Mr. Well's statements. The ALJ's rejection of the lay testimony is therefore affirmed.

**D.     Limitations in the RFC**

Plaintiff also argues that the ALJ erred by failing to include her moderate limitations in concentration, persistence and pace in the RFC, as well as her limitations in social functioning. The Court rejects this argument. An ALJ is not required to incorporate evidence that he properly determines to be not credible into the RFC. *Batson*, 359 F.3d at 1197. In the Ninth Circuit, an RFC restricting a claimant to simple tasks adequately captures moderate limitations in concentration, persistence and pace when it is consistent with the medical evidence. *See Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir. 2008). Here, the ALJ limited plaintiff to unskilled work with SVP of 1 or 2, and instructed that she can tolerate no more than brief, superficial contact with the public and only occasional contact with co-workers and supervisors. Tr. 16. These limitations adequately accounted for plaintiff's credible limitations. The Court therefore finds that the ALJ formulated an adequate RFC and accordingly submitted an accurate hypothetical to VE. *Stubbs–Danielson*, 539 F.3d at 1173–74. The Commissioner's conclusions were thus based on substantial evidence and are affirmed.

# IV.    CONCLUSION

The Commissioner's decision that plaintiff is not disabled was supported by substantial evidence in the record and is therefore AFFIRMED.

DATED this 1st day of April, 2015.

Michael McShane
United States District Judge